UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TOWN OF AMHERST, NEW YORK,

                         Plaintiff,

      v.

SIEMENS INDUSTRY, INC., formerly known as
  Siemens Building Technologies, Inc.,

                         Defendant.

**REPORT
and
RECOMMENDATION**

10-CV-00056S(F)

---

APPEARANCES:       E. THOMAS JONES
                           Town Attorney, Town of Amherst
                           Attorneys for Plaintiff
                           PHILIP B. ABRAMOWITZ, and
                           RICHARD L. WOLL
                           Deputy Town Attorneys, of Counsel
                           5583 Main Street
                           Williamsville, New York 14221

                           LITTLETON JOYCE UGHETTA PARK & KELLY LLP
                           Attorneys for Defendant
                           BYRON L. FRIEDMAN, of Counsel
                           1 Manhattanville Road
                           Suite 302
                           Purchase, New York 10577

## JURISDICTION

This action was referred to the undersigned by Honorable William M. Skretny on February 10, 2010, for report and recommendation on dispositive motions. The matter is presently before the court on Defendant's motion to dismiss (Doc. No. 4), filed January 22, 2010.

**BACKGROUND and FACTS**[1]

On January 23, 2002, Plaintiff Town of Amherst, New York ("Plaintiff" or "Town"), entered into a contract with Defendants Siemens Industry, Inc., formerly known as Siemens Building Technologies, Inc. ("Defendant" or "Siemens"), to purchase from Siemens a natural gas engine powering an oxygen generator ("the engine"), for $ 1, 872, 812, which amount was to be paid, pursuant to a Payment Schedule, in six monthly installments. Contract, Table 2.1. The purpose of the engine, which was installed at Plaintiff's Wastewater Treatment Plant 16 ("the Plant") in Amherst, was to use as part of the fuel powering the Plant's oxygen compressor "digester gases" produced as a byproduct of the Town's wastewater treatment process, thereby reducing the Town's energy costs for natural gas that otherwise powered the Plant.

The Contract also provided for the Town to obtain Defendant's service of the engine through a Technical Support Program ("the TSP"), by making annual payments to Siemens for up to ten years. The Contract defines the TSP as "the technical services to be provided by SIEMENS to the CLIENT [Plaintiff][2] during the Performance Guarantee Period, commencing on the Acceptance Date . . . ." Contract, General Table of Terms. The Contract's Acceptance Date is defined as "the date on which the Client signs the Certificate of Substantial Completion," *id*., which is defined as "documentation executed by the CLIENT agreeing that the Work, or a designated portion of the Work, is Substantially Complete in accordance with the Agreement and

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] Unless otherwise indicated, all bracketed material appearing in quoted text has been added.

such Work is accepted by the CLIENT." *Id*. As relevant to the instant case, the term "substantially complete" is defined as that date when "the Work, or any identifiable portion thereof, is sufficiently complete . . . that the CLIENT [Plaintiff] will be able to realize from such Work substantially all of the practical benefits intended to be gained therefrom, or otherwise to employ the Work of the FIMs [Facility Improvement Measures] associated therewith for their intended purposes . . . ." *Id*. The Certificate of Substantial Completeness provides:

> On the date indicated below we have accepted the Work described in said Agreement.
>
> Our acceptance of the Work means the Work (1) has been delivered, installed and subjected to all necessary pre-operational testing, (2) has been inspected by us, (3) is in good order and condition, (4) conforms to applicable to specifications, requirements and standards, (5) requires no improvement, modifications or additions to be completed for its intended use, and (6) is by this Certificate of Substantial Completion accepted by us as satisfactory in all respects.

Certificate of Substantial Completeness, Contract at 42.

Plaintiff never executed the Certificate of Substantial Completeness.

The TSP was also to begin when the engine's installation was "substantially complete" as defined under the Contract. Although Plaintiff never executed the Certificate of Substantial Completeness, Plaintiff began making payments under the TSP on October 20, 2002. Complaint ¶ 7. The TSP payments were to be made on a monthly basis, and ranged from $ 80,000 for the first year, and increased annually, with the tenth year's TSP payment being $ 130,674. Defendant was required to service the engine for each year Plaintiff remitted the annual TSP payment.

Attached as an exhibit to the Contract is the Contract's Performance Guarantee

("Performance Guarantee"), providing

> SIEMENS guarantees that the Guaranteed Savings generated from the Effective Date to the last date of the Performance Guarantee Period will be equal to the Total Guaranteed Savings shown on Table 1.2. * * * * The Performance Guarantee is dependent upon and is subject to the express condition precedent that the CLIENT [Plaintiff] enter into and maintain, during the entire term of the Performance Guarantee Period, the Technical Support Program. If the CLIENT [Plaintiff] fails to enter into, breaches, cancels or otherwise causes the termination of the Technical Support Program this Performance Guarantee shall terminate immediately and be void and of no force or effect.

Performance Guarantee, Contract, Exh. C, Art. 1, § 1.1.

The "Effective Date" is stated in the Contract as December 18, 2001. Contract at 1, Amendment. According to Table 1.2, Plaintiff's guaranteed savings over the ten years for which the TSP was to be in effect was $ 2, 699, 990. Performance Guarantee, Contract, Exh. C, Art. 1, § 1.2 and Table 1.2.

Plaintiff began making payments on the TSP on October 20, 2002, and continued to make such payments for four years, for a total of $ 348,403, before cancelling the TSP because the engine never worked as Plaintiff expected based on the engine's specifications and Defendant's representations of Guaranteed Savings. According to Plaintiff, use of the engine during those four years allegedly did not result in the energy costs savings anticipated by the Performance Guarantee, or any savings at all.

Plaintiff commenced this contract action on December 1, 2009 in New York Supreme Court, Erie County, alleging the engine the Town purchased from Defendant was defective. According to Plaintiff, the engine has never successfully operated on digester gas, such that the Town has realized no energy savings in natural gas costs through use of the engine in the Plant. Plaintiff further maintains that the engine has

4

not even reliably operated solely on natural gas to power the Plant. Plaintiff asserts five claims for relief, including: (1) breach of contract ("First Claim for Relief" or "breach of contract claim"); (2) breach of express warranty in violation of Uniform Commercial Code ("UCC") § 2-313 ("Second Claim for Relief" or "breach of express warranty claim"); (3) breach of implied warranty of merchantability in violation of UCC § 2-314 ("Third Claim for Relief" or "breach of implied warrant of merchantability claim"); (4) breach of implied warranty of fitness for a particular purpose in violation of UCC § 2-315 ("Fourth Claim for Relief" or "breach of implied warranty of fitness claim"); and (5) unjust enrichment ("Fifth Claim for Relief" or "unjust enrichment claim"). Attached to the Complaint is a copy of the contract ("Contract") for the Town's purchase of the engine from Siemens.

On December 24, 2010, copies of the summons and Complaint were served upon Defendant. On January 22, 2010, Defendant removed the action to this court, alleging federal subject matter jurisdiction based on diversity given that Plaintiff is a New York municipal corporation, whereas Defendant is a Delaware corporation with principal places of business in Illinois or Georgia.[3] Attached to the Notice of Removal are copies of the summons, and the Complaint with the attached Contract. (Doc. No. 1-2).

Also on January 22, 2010, Defendant filed the instant motion to dismiss the Complaint (Doc. No. 4) (Defendant's Motion"). The motion is supported by Defendant's Memorandum of Law in Support of Motion to Dismiss Under Rule 12(b)(6) Based on

---

[3] Plaintiff has not challenged the removal.

Statute of Limitations, Contractual Warranty Disclaimer, and Failure to State a Cause of Action (Doc. No. 5) ("Defendant's Memorandum"), and the Declaration of Bryon L. Friedman, Esq. (Doc. No. 6) ("Friedman Declaration"), with attached exhibits A and B ("Friedman Declaration Exh(s). __"). In opposition to Defendant's Motion, Plaintiff filed on March 19, 2010, the Declaration of Philip B. Abramowitz, Esq. (Doc. No. 13) ("Abramowitz Declaration"), with attached exhibits 1 through 4 ("Abramowitz Declaration Exh(s). __"). In further support of dismissal, Defendant filed on March 29, 2010 Defendant's Memorandum of Law in Reply to Motion to Dismiss Under Rule 12(b)(6) based on Statute of Limitations, Contractual Warranty Disclaimer, and Failure to State a Cause of Action (Doc. No. 14) ("Defendant's Reply"). Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be DENIED in part as to the First and Second Claims for Relief, DISMISSED as moot in part as to the Third and Fourth Claims for Relief, and GRANTED in part as to the Fifth Claim for Relief.

## DISCUSSION

Defendant moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint, asserting the breach of contract and breach of express warranty claims are time-barred, that all implied warranties were disclaimed under the terms of the Contract, and that the express Contract between the parties bars any *quasi* contract claim for unjust enrichment. Defendant's Memorandum at 1. Plaintiff, in opposing Defendant's Motion, concedes that the Third and Fourth Claims for relief, respectively asserting breaches of implied warranties of merchantability and fitness, should be dismissed because such

claims were effectively disclaimed by the Contract. Abramowitz Declaration ¶ 40. Plaintiff, however, argues that the breach of contract and breach of express warranty claims are not time-barred because the Contract's express warranty extends to future performance, and that accrual of Plaintiff's claim occurred within the applicable four-year limitations period. *Id*. ¶¶ 6-14. Plaintiff further asserts that absent any proof on the elements of its unjust enrichment claim, dismissal of the Fifth Claim for Relief would be improper. *Id*. ¶¶ 37-39. In further support of dismissal, Defendant asserts that the statute of limitations for warranty and contract claims commenced running when the claim accrued, rather than when the express warranty expired, and that reliance on the express Contract bars Plaintiff's *quasi* contract unjust enrichment claim. Defendant's Reply at 1.

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere

7

conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

Defendant asserts Plaintiffs' First and Second Claims for Relief, respectively alleging breach of contract and breach of express warranty, are time-barred by the relevant statutes of limitations, because Plaintiff's allegation that the engine has never worked, Complaint ¶ 8, accrued with the engine's installation on October 20, 2002, but the action was not commenced until December 1, 2009, more than seven years later. Defendant's Memorandum at 5. According to Defendant, because Plaintiff claims the engine "never" properly worked, the engine failed upon installation, triggering the limitations period for both the breach of contract and breach of warranty claims. *Id*. at 7. Plaintiff argues in opposition that because the Contract's express warranty is a warranty for future performance, guaranteeing the engine will work for ten years, the claims for breach of contract and breach of express warranty are not time-barred because performance of the Contract could not be complete for ten years. Abramowitz Declaration ¶¶ 10-13. In further support of dismissal based on the statute of limitations,

conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

Defendant asserts Plaintiffs' First and Second Claims for Relief, respectively alleging breach of contract and breach of express warranty, are time-barred by the relevant statutes of limitations, because Plaintiff's allegation that the engine has never worked, Complaint ¶ 8, accrued with the engine's installation on October 20, 2002, but the action was not commenced until December 1, 2009, more than seven years later. Defendant's Memorandum at 5. According to Defendant, because Plaintiff claims the engine "never" properly worked, the engine failed upon installation, triggering the limitations period for both the breach of contract and breach of warranty claims. *Id*. at 7. Plaintiff argues in opposition that because the Contract's express warranty is a warranty for future performance, guaranteeing the engine will work for ten years, the claims for breach of contract and breach of express warranty are not time-barred because performance of the Contract could not be complete for ten years. Abramowitz Declaration ¶¶ 10-13. In further support of dismissal based on the statute of limitations,

Defendant concedes that the Performance Guarantee is a warranty of future performance, yet asserts that Plaintiff's allegation that the engine failed immediately upon installation renders irrelevant Plaintiff's reliance on future performance to extend the Contract's express warranty beyond the UCC's four years. Defendant's Reply at 1-2.

The applicable limitations period for Plaintiff's breach of contracts claim and breach of express warranty is four years under New York's[4] Uniform Commercial Code ("UCC"), New York Uniform Commercial Code ("N.Y. U.C.C.")[5] § 2-725. Defendant maintains Plaintiff's breach of contract and breach of express warranty claims are time-barred under the UCC.[6]

Under relevant New York law, "[a]n for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.Y. U.C.C. § 2-725(1). Further, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occur when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been

---

[4] Because the Contract provides that it "shall be governed and construed in accordance with the laws of the state or commonwealth within which the Facilities are located," Contract, Art. 9, § 9.3, and it is undisputed that the relevant Facilities where the water treatment plant for which the engine was purchased are located within Plaintiff Town of Amherst, New York, New York law applies.

[5] Unless otherwise indicated, references to N.Y. U.C.C. are to "McKinney's 2001."

[6] Although Defendant initially asserted, Defendant's Memorandum at 5, that Plaintiff's breach of contract claim would also be time-barred under New York's six-year limitations period for breach of a contract not subject to the UCC, New York Civil Procedure Laws and Rules ("N.Y. C.P.L.R.") (McKinney's 2003), § 213.2, Plaintiff has conceded, Abramowitz Declaration ¶¶ 11-13, that the relevant limitations period is pursuant to N.Y. U.C.C. § 2-725, or four years.

discovered." N.Y. U.C.C. § 2-725(2). In the instant case, the factual allegations of the Complaint, accepted as true, "raise a right to relief above the speculative level" such that Plaintiff's breach of contract and express warranty claims are plausible. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).

Although Plaintiff never executed the Certificate of Substantial Completeness, Abramowitz Declaration ¶ 27, Plaintiff did commence tendering TSP payments to Defendant in October 2002, thereby initiating Defendant's performance obligations under the Performance Guarantee Period which, according to the Performance Guarantee, including the engine's performance as represented and expressly warranted to Plaintiff, is to commence running on "the Effective Date," *i.e.*, December 18, 2001, "to the last date of the Performance Guarantee Period." Because Plaintiff tendered TSP payments to Defendant for four years, commencing in October 2002, Plaintiff's last of the four TSP payments would have been made in October 2005. Further, because the TSP "automatically renew[ed] for successive one (1) year periods beginning on the anniversary of the original term," Contract, Exh. B, Art. 1 § 3, Plaintiff's payment in October 2005 would have renewed the TSP until October 2006, when Plaintiff's failure to remit the next annual payment would have resulted in the Performance Guarantee's termination. Thus, Plaintiff's right to enforce the express warranties covering the engine's performance was extended year-to-year until Plaintiff ceased making the requisite payments.

There can be no doubt that the Performance Guarantee constitutes a warranty for future performance for so long as Plaintiff continued to make the annual TSP payments, for a maximum of ten years. In fact, Defendant's argument in further

support of dismissal concedes that the Performance Guarantee does warrant future performance, yet maintains that despite such warranty, Plaintiff's allegation that the engine "never" worked establishes the breach of contract and warranty claims accrued upon installation on October 20, 2002. Defendant's Reply at 2-4.

Significantly, "[w]ith respect to a breach of warranty, UCC 2-725(2) provides that such a cause of action accrues 'when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.'" *St. Patrick's Home for the Aged and Infirm v. Latricrete International, Inc.*, 696 N.Y.S.2d 117, 123 (1st Dep't 1999) (quoting N.Y. U.C.C. § 2-725(2)). "A warranty of future performance is one that guarantees that the product will work for a specified period of time." *Id*. (citing *Dormitory Auth. v. Michael Baker, Jr., Inc.*, 630 N.Y.S.2d 313 (1st Dep't 1995)). Here, the Performance Guarantee, which was to remain in effect for so long as Plaintiff made the annual TSP payment, constitutes a warranty of future performance such that the four-year limitations period did not commence until Plaintiff discovered the alleged breach. It is significant that at issue in none of the cases on which Defendant relies, Defendant's Memorandum at 7-9, for the proposition that Plaintiff should have discovered the alleged breaches in October 2002 when Defendant's installation of the engine was complete, and promptly commenced suit, *e.g.*, *Long Island Lighting Co. v. IMO Industries, Inc.*, 6 F.3d 876 (2d Cir. 1993), *Wyandanch Volunteer Fire Co., Inc. v. Radon Const. Corp.*, 798 N.Y.S.2d 484 (2d Dep't 2005), *Weiss v. Herman*, 597 N.Y.S.2d 52 (1st Dep't 1993), *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979), and *Gemini*

*Typographers, Inc. v. Mergenthaler Linotype Co., Division of Eltra Corp.*, 368 N.Y.S.2d 210 (1st Dep't 1975), was a warranty for future performance which was renewed on an annual or other periodic basis upon the payment of a fee, such that the warranty was renewed as alleged here.

Nor has Defendant pointed to any caselaw imposing on Plaintiff a duty to investigate to determine whether the subject engine has ever worked for any other Siemens' customer, so as to discern earlier whether Plaintiff should have discovered that Siemens, in fact, sold Plaintiff a defected engine that, regardless of the amount of technical service suppled by Defendant in accordance with the TSP, could never perform at anticipated by the Performance Contract Guarantee, and the court's research reveals none. Further, the Second Circuit generally has been hesitant to mandate a "duty to inquire" into cause. *See, e.g.*, *Frier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 205-06 (2d Cir. 2002) (declining to require plaintiffs, who sought to recover from defendant monetary damages for personal injuries, *i.e.*, cancer, allegedly caused by defendant's disposal of carcinogenic waste materials into landfill in close proximity to areas in which plaintiffs lived, worked, or recreated, to investigate to determine the cause of such cancers, even though sufficient information was available such that action could have been commenced more than three years prior to the date complaint was filed).

Rather, in the instant case, despite alleging the engine "never" worked, Plaintiff's continued remittance of the annual TSP payment indicates Plaintiff had some good faith belief that Defendant would, eventually, make good on its contractual obligation to deliver an engine that functioned as anticipated by the Performance Guarantee, such

12

that Plaintiff would, eventually, realize all the savings promised by the Performance Guarantee. Indeed, by accepting Plaintiff's annual TSP payments, either Defendant believed it could make the engine operate as warranted, or Defendant accepted the payments with the knowledge that the engine was incapable of working as warranted, suggesting Defendant's conduct to be lacking in good faith. Because the Performance Guarantee warranted the engine's future performance, provided Plaintiff continued to remit the annual payment, for ten years, "*discovery of the breach must await the time of such performance*," N.Y. U.C.C. § 2-725(2), such that the relevant issue is when did Plaintiff discover the breach.

Because Defendant's Motion seeks dismissal under Rule 12(b)(6) for failure to state a claim, the court is required to determine whether the Complaint states a plausible claim on its face, and is required "'to draw on its judicial experience and common sense'" in making such determination. *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1950). Here, the court, drawing on its judicial experience and common sense, finds that Plaintiff's continued annual payments for the TSP for four years, totaling nearly $ 350,000, despite the fact the engine "never" worked, requiring Plaintiff to use a different engine with higher energy costs, indicates Plaintiff's plausible belief that Defendant would, eventually, be able to fix, modify, or otherwise correct the problem with the engine such that the engine would function as anticipated in accordance with the terms of the Contract. Even assuming the engine "never" worked, as alleged, Complaint ¶ 8, such fact does not necessarily preclude a determination, based on a fully developed record after discovery, that Defendant had assured Plaintiff that despite the engine's failure to work, the situation could be rectified and Plaintiff

13

could still see sufficient energy savings in accordance with those anticipated by Table 1.2 of the Performance Guarantee, or made some other concession to Plaintiff such that Plaintiff did not consider the warranty and contract to be irreparably "breached" until four years after the engine was installed, *i.e.*, October 2006, when the fifth TSP payment would have been due.  *See*, *e.g.*, *U.S. Network Services, Inc. v. Frontier Communications of the West, Inc.*, 115 F.Supp.2d 353, 357 (W.D.N.Y. 2000) (denying defendant's motion to dismiss complaint alleging breach of contract and breach of warranty where plaintiff's reliance on defendant's representations as to future performance created issue as to whether defendant had, in fact, misrepresented such future performance).

Plaintiff's failure to make the fifth TSP payment in October 2006 indicates it is plausible that Plaintiff did not discover, until some date between when Plaintiff made the fourth TSP payment in October 2005, and October 2006 when Plaintiff failed to make the fifth TSP payment, that Defendant would never be able to rectify the pervasive engine failure and that Defendant had, in fact, breached both the Contract and the express warranty for future performance set forth in the Performance Guarantee.   That the Contract defines "Guaranteed Savings" as the amount of savings Plaintiff could anticipate, calculated "in the aggregate," rather than on the annual basis provided in Performance Guarantee Table 1.2 supports this finding.

Further, insofar as Defendant asserts, Defendant's Reply at 2, that the action would be timely only if the action accrued on or after December 1, 2005, should the evidence establish that Plaintiff discovered the breach between October 2005 and December 1, 2005, the action would be time-barred under the UCC's four-year

14

limitations period for breach of contract and express warranty claims. Absent a fully-developed record, dismissal of the Complaint based on a failure to state claims for breach of contract or breach of express warranty would be premature.

Finally, with regard to Plaintiff's Fifth Claim for Relief alleging unjust enrichment, unjust enrichment is a *quasi* contract claim, for which recovery is ordinarily precluded by the existence fo a valid and enforceable written contract governing the same subject matter as that out of which the *quasi* contract claim arises. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987) ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." (citing cases)). Further, under New York law, "a party may not recover under a theory of unjust enrichment" where a valid and enforceable contract governs the particular subject matter of the action. *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (analyzing plaintiff's unjust enrichment claim under New York law).

In the instant case, Plaintiff does not dispute that the instant claims are subject to the construction of a valid and enforceable contract. As such, Plaintiff's Fifth Claim for Relief on an unjust enrichment theory should be DISMISSED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss (Doc. No. 4), should be DENIED in part, DISMISSED as moot in part, and GRANTED in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: July 1, 2010
Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: July 1, 2010
Buffalo, New York

17